U.S. District Court
No. 92-338

DEANNA WALLS

v.

OXFORD MANAGEMENT COMPANY, INC.
AND
NASHUA–OXFORD BAY ASSOCIATES LIMITED PARTNERSHIP

November 4, 1993

654

*Devine & Nyquist*, of Manchester (*Lee C. Nyquist* and *Maureen Raiche Manning* on the brief, and *Mr. Nyquist* orally), for the plaintiff.

*Sulloway & Hollis*, of Concord (*Martin L. Gross* and *William D. Pandolph* on the brief, and *Mr. Gross* orally), for the defendants.

*New Hampshire Legal Assistance*, of Manchester (*Thomas G. Bunnell* on the brief), for Sandra Berthold, as *amicus curiae*.

HORTON, J. The United States District Court for the District of New Hampshire (*Loughlin*, J.) has certified to this court the following questions: (1) Does New Hampshire law impose a duty on landlords to provide security to protect tenants from the criminal attacks of third persons? (2) Does this State's law of implied warranty of habitability oblige landlords to provide security to protect tenants from the criminal attacks of third persons?

On December 13, 1988, the plaintiff, Deanna Walls, was sexually assaulted in her vehicle, which was parked on the premises of the Bay Ridge Apartment Complex in Nashua. The plaintiff lived with her mother, who leased an apartment at Bay Ridge. Gerard Buckley was arrested and subsequently convicted of sexually assaulting the plaintiff. Bay Ridge is owned by defendant Nashua-Oxford Bay Associates Limited Partnership (Nashua-Oxford), and managed by defendant Oxford Management Company, Inc. (Oxford). It consists of 412 apartments located in fourteen buildings. During the two years prior to the assault, the Bay Ridge complex had been the site of a number of crimes directed against property, including eleven automobile thefts, three attempted automobile thefts, and thirty-one incidents involving criminal mischief/theft. No sexual assaults or similar attacks against persons had been reported.

The plaintiff brought this action in federal court, charging that the defendants

> "had a duty to hire and contract with a competent management company, had a duty to provide reasonable security measures for the protection of residents of Bay Ridge, a duty to warn residents of its lack of security, as well as a duty to warn residents of the numerous criminal activities which had taken place on the premises of Bay Ridge and in the vicinity of Bay Ridge."

The plaintiff alleges that the defendants breached these duties, and that the breach was a proximate cause of the sexual assault. The record reflects that the questions were certified in advance of ruling on the defendants' motion to dismiss for failure to state a claim, and on the defendants' motion for summary judgment. The parties have agreed to certain facts and the record discloses other facts developed under the summary judgment procedure. The questions certified are general and not phrased in the context of these facts. Our answers, although general, are necessarily given in the context of these facts.

*I. Landlord's Duty to Secure Tenants Against Criminal Attack*

The issues raised by the first question place the court at the confluence of two seemingly contradictory principles of law. On one hand lies the accepted maxim that all persons, including landlords, have a duty to exercise reasonable care not to subject others to an unreasonable risk of harm. *See Sargent v. Ross*, 113 N.H. 388, 391, 308 A.2d 526, 534 (1973). On the other hand, a competing rule holds that private persons have no general duty to protect others from the criminal acts of third persons. *See* RESTATEMENT (SECOND) OF TORTS § 314 (1965); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 33, at 201 (5th ed. 1984).

■■ Claims for negligence "rest primarily upon a violation of some duty owed by the offender to the injured party." *Guitarini v. Company*, 98 N.H. 118, 118, 95 A.2d 784, 785 (1953). Absent a duty, there is no negligence. *Id.* Whether a duty exists in a particular case is a question of law. *See Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 304, 605 A.2d 208, 213 (1992); *Goodwin v. James*, 134 N.H. 579, 583, 595 A.2d 504, 506–07 (1991); *Paquette v. Joyce*, 117 N.H. 832, 837, 379 A.2d 207, 210 (1977). Only after a court has determined that a defendant owed a plaintiff a duty, and identified the standard of care imposed by that duty, may a jury consider the separate question of whether the defendant breached that duty. *See Young v. Clogston*, 127 N.H. 340, 342, 499 A.2d 1007, 1008–09 (1985).

■■ While of paramount importance to the analysis of a claim for negligence, duty "is an exceedingly artificial concept." *Libbey v. Hampton Water Works Co.*, 118 N.H. 500, 502, 389 A.2d 434, 435 (1978). In some cases, a party's *actions* give rise to a duty. *See Manchenton*, 135 N.H. at 304, 605 A.2d at 213. A party who does not otherwise have a duty, but who voluntarily renders services for another, has been held to a duty of reasonable care in acting. *See Smith v. American Employers' Ins. Co.*, 102 N.H. 530, 533, 163 A.2d 564, 567 (1960); *Tullgren v. Company*, 82 N.H. 268, 270–71, 133 A. 4, 6 (1926); RESTATEMENT (SECOND) OF TORTS, *supra* §§ 323, 324. In other cases, a duty *to act* exists based on a special relationship between two parties. *See Libbey*, 118 N.H. at 502, 389 A.2d. at 435. In either case, the scope of the duty imposed is limited by what risks, if any, are reasonably foreseeable. *Goodwin*, 134 N.H. at 583, 595 A.2d at 507. As a general rule, "a defendant will not be held liable for negligence if he could not reasonably foresee that his conduct would result in an injury or if his conduct was reasonable in light of what he could anticipate." *Id.*

■■ When charged with determining whether a duty exists in a particular case, we necessarily encounter the broader, more fundamental question of "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Libbey*, 118 N.H. at 502, 389 A.2d at 435 (quotation omitted). The decision to impose liability ultimately rests on "a judicial determination that the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." *Libbey*, 118 N.H. at 502, 389 A.2d at 435 (quotations and brackets omitted). *See generally* KEETON, *supra* § 54, at 358 (duty not sacrosanct in itself, but only expression of sum total of policy considerations).

At one time, landlords enjoyed considerable immunity from "simple rules of reasonable conduct which govern other persons in their daily activities." *Sargent*, 113 N.H. at 391, 308 A.2d at 530. A landlord owed no general duty to his tenants, and could be found liable for injuries caused by a defective or dangerous condition on leased property only if the injuries were "attributable to (1) a hidden danger in the premises of which the landlord but not the tenant [was] aware, (2) premises leased for public use, (3) premises retained under the landlord's control, such as common stairways, or (4) premises negligently repaired by the landlord." *Id.* at 392, 308 A.2d at 531. In *Sargent*, however, this court abolished landlord immunity, and held that a landlord has a duty to act as a reasonable person under all the circumstances. *Id.* at 397, 308 A.2d at 534. We acknowledged that "[c]onsiderations of human safety within an urban community dictate that the landowner's relative immunity, which is primarily supported by values of the agrarian past, be modified in favor of negligence principles of landowner liability." *Id.* at 396, 308 A.2d at 533 (quotation omitted).

■■ While we can state without reservation that landlords owe a general duty of reasonable care to their tenants, our efforts at resolving the first question presented are complicated by the competing common law rule that private citizens ordinarily have no duty to protect others from criminal attacks. *See generally* RESTATEMENT (SECOND) OF TORTS, *supra* § 314; KEETON, *supra* § 33, at 201; *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477, 481 (D.C. Cir. 1970). This rule is grounded in the fundamental unfairness of holding private citizens responsible for the unanticipated criminal acts of third parties. "Under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the

law. . . . Although [crimes] do occur . . . they are still so unlikely that the burden of taking continual precautions against them almost always exceeds the apparent risk." KEETON, *supra* § 33, at 201. In keeping with this rule, courts have largely refused to hold landlords to a general duty to protect tenants from criminal attack. *See, e.g., Aaron v. Havens*, 758 S.W.2d 446, 448 (Mo. 1988); *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 216–17, 531 N.E.2d 1358, 1364 (1988); *Brichacek v. Hiskey*, 401 N.W.2d 44, 48 (Iowa 1987); *Scott v. Watson*, 278 Md. 160, 166, 359 A.2d 548, 552 (1976); *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 157, 207 S.E.2d 841, 844 (1974).

We agree that as a general principle, landlords have no duty to protect tenants from criminal attack. Without question, there is much to be gained from efforts at curtailing criminal activity. Yet, we will not place on landlords the burden of insuring their tenants against harm from criminal attacks.

Our inquiry is not concluded, however, as we must further consider whether exceptions to the general rule against holding individuals liable for the criminal attacks of others apply to the landlord-tenant relationship. A review of the law in this area suggests four such exceptions. The first arises when a special relationship, such as that of innkeeper-guest, or common carrier-passenger, exists between the parties. *See* RESTATEMENT (SECOND) OF TORTS, *supra* § 314A. Courts have repeatedly held, however, that a landlord-tenant relationship is not a special relationship engendering a duty on the part of the landlord to protect tenants from criminal attack. *See, e.g., Rowe*, 125 Ill. 2d at 216, 531 N.E.2d at 1364; *Braitman v. Overlook Terrace Corp.*, 68 N.J. 368, 377, 346 A.2d 76, 79 (1975); *Faheen By Hebron v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo. App. 1987). *But see Kline v. 1500 Massachusetts Avenue*, 439 F.2d at 485 (finding landlord-tenant relationship analogous to that of innkeeper-guest).

A second exception arises where "an especial temptation and opportunity for criminal misconduct *brought about by the defendant*, will call upon him to take precautions against it." KEETON, *supra* § 33, at 201 (emphasis added). This exception follows from the rule that a party who realizes or should realize that his conduct has created a condition which involves an unreasonable risk of harm to another has a duty to exercise reasonable care to prevent the risk from taking effect. RESTATEMENT (SECOND) OF TORTS, *supra* § 321; *see also* RESTATEMENT (SECOND) OF TORTS, *supra* § 448 (criminal act of third person is superseding cause of harm to another unless defendant could have foreseen that his negligent conduct increased risk of crime). Accordingly, in the majority of cases in which a landlord has

been held liable for a criminal attack upon a tenant, a known physical defect on the premises foreseeably enhanced the risk of that attack. *See, e.g., Braitman*, 68 N.J. at 371, 381, 346 A.2d at 77, 83 (defective deadbolt on apartment door); *Aaron*, 758 S.W.2d at 446 (broken window latch); *Duncavage v. Allen*, 497 N.E.2d 433, 437 (Ill. App. 1986) (inoperable lighting; ladder left unattended near unlocked window).

A third exception is the existence of overriding foreseeability. Some courts have held landlords to a duty to protect tenants from criminal attacks that were clearly foreseeable, even if not causally related to physical defects on the premises. *See, e.g., Trentacost v. Brussel*, 82 N.J. 214, 218, 412 A.2d 436, 438 (1980) (criminal activity apparent in plaintiff's neighborhood); *Holley v. Mt. Zion Terrace Apartments, Inc.*, 382 So. 2d 98, 100 (Fla. App. 1980) (apartment complex plagued by high incidence of serious crime); *Kline v. 1500 Massachusetts Avenue*, 439 F.2d at 483 (crimes perpetrated against tenants in common area of apartment complex); *Johnston v. Harris*, 387 Mich. 569, 573–74, 198 N.W.2d 409, 410–11 (1972); *Faheen*, 734 S.W.2d at 273.

The fourth exception derives from the general tort principle that one who voluntarily assumes a duty thereafter has a duty to act with reasonable care. *See* RESTATEMENT (SECOND) OF TORTS, *supra* §§ 323, 324. Thus, landlords who gratuitously or contractually provide security have been found liable for removing the security in the face of a foreseeable criminal threat. *See Holley*, 382 So. 2d at 100; *Kline v. 1500 Massachusetts Avenue*, 439 F.2d at 482–83; *Rowe*, 125 Ill. 2d at 217, 531 N.E.2d at 1365.

■ We hold that while landlords have no general duty to protect tenants from criminal attack, such a duty may arise when a landlord has created, or is responsible for, a known defective condition on a premises that foreseeably enhanced the risk of criminal attack. Moreover, a landlord who undertakes, either gratuitously or by contract, to provide security will thereafter have a duty to act with reasonable care. Where, however, a landlord has made no affirmative attempt to provide security, and is not responsible for a physical defect that enhances the risk of crime, we will not find such a duty. We reject liability based solely on the landlord-tenant relationship or on a doctrine of overriding foreseeability.

■■ A finding that an approved exception applies is not dispositive of the landlord's liability for a tenant's injury. Where a landlord's duty is premised on a defective condition that has foreseeably enhanced the risk of criminal attack, the question whether the defect

was a proximate or legal cause of the tenant's injury remains one of fact. Moreover, where a landlord has voluntarily assumed a duty to provide some degree of security, this duty is limited by the extent of the undertaking. *Rowe*, 125 Ill. 2d at 218–19, 531 N.E.2d at 1365. For example, a landlord who provides lighting for the exterior of an apartment building might be held liable for failing to insure that the lighting functioned properly, but not for failing to provide additional security measures such as patrol services or protective fencing. The answer to the first certified question is no, subject to the pleading or proof, as appropriate, of facts supporting the approved exceptions.

## II. Implied Warranty of Habitability

The second certified question concerns whether a landlord's implied warranty of habitability to provide a reasonably safe premises requires the landlord to secure tenants against criminal attack.

 An agreement for the rental of an apartment unit contains an "implied warranty . . . that the apartment is habitable and fit for living," and that "there are no latent defects in facilities vital to the use of the premises for residential purposes." *Kline v. Burns*, 111 N.H. 87, 92, 276 A.2d 248, 251–52 (1971); *see also Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1074 (D.C. Cir. 1970). The implied warranty is measured in part by standards set forth in housing codes. *See Kline v. Burns*, 111 N.H. at 91, 276 A.2d at 251. A defect constituting a breach of this warranty "must be of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living therein." *Id.* at 93, 276 A.2d at 252.

 Until now, this court had not considered whether a landlord's failure to provide security against criminal attack renders a dwelling "unsafe" or "unfit for living," and thus in breach of the implied warranty of habitability. We therefore look for guidance in decisions from other jurisdictions. In *Williams v. William J. Davis, Inc.*, 275 A.2d 231, 231–32 (D.C. 1971), the District of Columbia Court of Appeals answered this question in the negative, holding that housing regulations referring to "clean, safe and sanitary conditions," and a "healthy and safe" premises, did not oblige a landlord to furnish protection against criminal attacks. According to the court, the terms "safe" and "safety" referred to structural defects, fire hazards, and unsanitary conditions, not to safety from criminal acts of third parties. *Id.* at 232; *see also Deem v. Charles E. Smith Management, Inc.*, 799 F.2d 944, 946 (4th Cir. 1986); *Cooke v. Allstate Management Corp.*, 741 F. Supp. 1205, 1208 (D.S.C. 1990). *But see Duncavage*, 497 N.E.2d at 440; *Trentacost*, 82 N.J. at 228, 412 A.2d at 443.

We hold that the warranty of habitability implied in residential lease agreements protects tenants against structural defects, but does not require landlords to take affirmative measures to provide security against criminal attack. This holding in no way limits a tenant's recovery when a landlord has violated an express agreement to provide security measures, or has invited such an attack through a violation of an express housing code requirement. Our answer to the second certified question is no.

*Remanded.*

All concurred.