Suburban v. Trianco                    CV-94-403-M    12/18/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Suburban Propane, L.P.,
        Plaintiff
    v.                                          Civil No. 94-403-M
Trianco-Heatmaker, Inc.;
Davidson, Gourley & Acker, Inc.; and
Lakeview Condominium Association, Inc.,
        Defendants
    v.
Washington Resources Group, Inc.,
        Third Party Defendant


**O R D E R**


    Defendant Davidson, Gourley, and Acker ("DGA"), a condominium management company, moves for summary judgment on Suburban's claims for contribution and indemnification.[1] Suburban responds that DGA breached duties owed to the plaintiffs in the underlying tort suit, making it liable for part of the settlement amount under New Hampshire's contribution statute. Suburban also contends that DGA is bound by the indemnification provision in Suburban's sales and service agreement with Lakeview Condominium Association. For the reasons that follow, DGA's motion for summary judgment is granted as to Suburban's indemnification claim, but denied as to the contribution claim.


**Standard of Review**

---

    [1]Many of the same issues were raised in Lakeview Condominium Association's motion for summary judgment. Some repetition of background facts, applicable legal standards, and analysis set out in that order is necessary here.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A genuine factual issue exists if a reasonable jury could decide the issue in favor of the nonmoving party, and a fact is material if its resolution can affect the outcome of the suit under the applicable substantive law. See Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., No. 97-1269, 1997 WL 476360 at *1 (1st Cir. Aug. 26, 1997). The court interprets the record in the light most favorable to the nonmoving party, Suburban in this case, and resolves all inferences in its favor. Saenger Organization v. Nationwide Ins. Assoc., 119 F.3d 55, 57 (1st Cir. 1997). Nevertheless, Suburban cannot rest on conclusory allegations, unsupported inferences, or speculation to avoid summary judgment as to matters upon which it bears the burden of proof at trial. Woods-Leber, 1997 WL 476360 at *2. Thus, summary judgment will be granted if the record shows no trial

2

worthy factual issue and if the moving party, Lakeview here, is entitled to judgment as a matter of law. EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).


## Background

Dianne Connors rented unit 291 at Lakeview Condominiums beginning March 1, 1993, but apparently did not execute a written lease. Unit 291 was owned by Hoover Sutton, who employed DGA to provide management services which included serving as the rental agent for the unit. Ms. Connors dealt with Ms. Gourley of DGA when she rented unit 291.

When Ms. Connors arrived to move into the condominium, she discovered that there was no heat. She notified DGA and DGA contacted George "Tony" Dube, the plumber DGA often used to repair heating systems in condominium units it managed. Mr. Dube worked on the furnace on Friday, March 5, but the furnace continued to malfunction after he left. That night, Ms. Connors and her boyfriend, David Bowers, decided that it was unsafe to stay in the condominium. They turned off the furnace and left to stay elsewhere.

The next morning, Saturday, March 6, Mr. Bowers called Suburban to report the problems with the heating system. Suburban sent a repair person, Michael Paquette, who worked on the furnace. Ms. Connors, her son, John Lipsey, and Mr. Bowers moved into the condominium that day. All three were discovered in the condominium on Monday morning, March 8. Mr. Bowers and

3

John Lipsey were dead; Ms. Connors was unconscious.  It was later determined that they were asphyxiated by carbon monoxide escaping from the malfunctioning furnace.  The gas also affected residents in other neighboring condominiums.

Those who were injured and representatives of the estates of Mr. Bowers and John Lipsey filed suit against Suburban alleging negligence in the repair of the furnace as causing the injuries and deaths.  Suburban settled the claims and paid plaintiffs in the underlying actions the amounts agreed upon.  Suburban then filed suit against Lakeview Condominium Association, DGA, and Trianco-Heatmaker, Inc., seeking contribution and indemnification for the amounts it paid.

## Discussion

### A.  Contribution

Under New Hampshire law, "a right of contribution exists between or among 2 or more persons who are jointly and severally liable upon the same indivisible claim, or otherwise for the same injury, death or harm, whether or not judgment has been recovered against all or any of them."  RSA[2] § 507:7-f, I.  Contribution is available following settlement of claims only if "the settlement extinguishes the liability of the person from whom contribution is sought, and then only to the extent that the amount paid in settlement was reasonable."  RSA § 507:7-f, II.  Thus, a

---

[2]Citations and references to New Hampshire Statutes Annotated will be in the customary form of "RSA."

4

contribution claim depends first upon whether the contribution-defendant was liable for the damages paid to the plaintiffs in the underlying suit.

Suburban contends that DGA is liable because it was negligent in the performance of duties it owed to the plaintiffs in the underlying actions. To maintain a negligence cause of action, "the plaintiff must demonstrate the existence of a duty flowing from the defendant to the plaintiff and that the defendant's breach of that duty caused the injury for which the plaintiff seeks to recover." Hickingbotham v. Burke, 140 N.H. 28, 34 (1995). A negligence theory of liability, therefore, "'rest[s] primarily upon a violation of some duty owed by the offender to the injured party.'" Walls v. Oxford Management Co., 137 N.H. 653, 656 (1993) (quoting Guitarini v. Company, 98 N.H. 118 (1953)). An actionable duty must arise from common law, although a statutory duty may provide the applicable standard of care. Stillwater Condominium Ass'n v. Salem, 140 N.H. 505, 507 (1995). Duty, however, is not a single theory or exclusive concept since imposition of legal duty is a legal question, in New Hampshire jurisprudence, that depends upon policy considerations as well as obligations previously recognized in the common law. See Hickingbotham, 140 N.H. at 34. Duties have been found to arise from the foreseeable consequences of a party's actions, from voluntary services, and from relationships between parties. See Walls, 137 N.H. at 656.

5

Suburban alleges in its complaint that DGA negligently performed its management, maintenance, and repair responsibilities by failing to properly repair or replace the malfunctioning heating system and by failing to hire a qualified repair person.  As a result, Suburban alleges, DGA breached its duty to provide and maintain safe conditions in the managed property.  In its motion for summary judgment, DGA contends that it performed appropriately and that it cannot be held vicariously liable for the negligence of Tony Dube, an independent contractor.

## 1.   **Negligent Hiring**

Suburban contends that DGA is indeed liable to the injured plaintiffs for negligently hiring Tony Dube to repair the furnace.  The New Hampshire Supreme Court recently considered the law relevant to negligent hiring and followed the rule provided in the Restatement (Second) of Torts  section 411 (1965):  "'An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor . . . to do work which will involve a risk of physical harm unless it is skillfully and carefully done.'"  Richmond v. White Mountain Recreation Ass'n, 140 N.H. 755, 758 (1996).  Employment of a contractor to do the kind of work he ordinarily would be expected to do competently, such as hiring a plumber to repair plumbing a carpenter to repair ceilings, or a heating repair person to repair a heating system,

6

is reasonable, without further examination of his skill, unless the employer has reason to know that the contractor is not competent. Id. Suburban has pointed to no facts of record that create a genuine dispute as to whether DGA should have known that Tony Dube was not qualified or competent to repair the heating system in unit 291.[3]

Suburban also argues that repair of the heating system was an inherently dangerous or at least a highly dangerous activity, such that DGA can not avoid liability under the independent contractor rule. As DGA points out, the New Hampshire Supreme Court has held that activities which are dangerous only if performed negligently are not inherently dangerous and, thus, do not impose a non-delegable duty on the employer of an independent contractor. Arthur v. Holy Rosary Credit Union, 139 N.H.463, 466 (1995) ("[T]he inherent danger doctrine is inapplicable as a matter of law where, as here, the danger derived not from the nature of the work, but from the negligence of the contractor."). DGA offers no factual support for its contention that the heating repairs in unit 291 presented a "danger [that] is 'naturally to be apprehended' by the defendant at the time it engages in the work." Id. at 465-66. Accordingly, the inherently-dangerous-

---

[3]To the contrary, the facts referenced by Suburban suggest that DGA had good reason to rely on Tony Dube's competence. In 1993, Dube was a licensed master plumber; he had worked on the heating systems in the Lakeview Condominiums for years without incident; to the extent there had been some complaints, they were ordinary and minor in nature; and, although he was not a certified repair person for those particular heating systems, his general experience and state license reasonably supported DGA's conclusion that he was competent to do such repairs.

7

activity doctrine does not apply to the facts presented in this case.

Alternatively, Suburban contends that the repair activity constituted highly dangerous activity obligating DGA to "ascertain the contractor's actual competence" to perform the repairs, Restatement(Second) of Torts § 411, comment c, or to take "precautionary measures" to avoid injuries, Carr v. Merrimack Farmers Exchange, 101 N.H. 445, 448 (1958). Suburban cites no prior decisions in which repair of a heating system was determined to be a highly dangerous activity, nor does it appear to be an obviously dangerous activity for a trained repair person. Suburban also does not point to any facts of record showing that DGA had prior knowledge that the heating system in unit 291 presented any unusual or particular hazard or that Tony Dube was not competent to handle the necessary repairs. Accordingly, neither an inherently nor highly dangerous activity theory fits the undisputed facts presented in this record.

## 2.  Negligent Performance of Management Duties

DGA contends that because it reasonably hired Tony Dube, an independent contractor, to perform the necessary repairs to the heating system in unit 291, it cannot be held liable for injuries that may have been caused by his negligence. See Richmond, 140 N.H. at 758. Suburban counters that the "special relationship" between DGA and the tenants who rented unit 291 obligated DGA to perform the duties and assume the liabilities of a landlord. The

8

duties of a landlord, Suburban argues, including the obligation to maintain rental property in a reasonably safe condition, are non-delegable.

In support of its contention that DGA should be deemed a landlord, Suburban points to the statutory definition of landlord set out in RSA 541-A::1,I ("'Landord' means an owner, lessor or agent thereof who rents or leases residential premises"). Neither Suburban nor DGA addresses the question of whether that statutory definition of "landlord" is also applicable for purposes of establishing the existence of a duty under New Hampshire's common law of negligence, or is limited to statutory actions brought under RSA 541-A.  See also RSA 48-A:14 (incorporating the section 541-A:1,I definition of "landlord" for purposes of setting minimum standards for leased residential premises).  Nor have either discussed what facts might support a common-law landlord/tenant relationship.  The facts of record do suggest that DGA acted as the owner's agent in renting unit 291. Thus, DGA's actual relationship to the tenant-plaintiffs is disputed, but it would be a material dispute only if the nature of that relationship affected DGA's legal liability for plaintiffs' injuries.

Landlords owe a general duty to "exercise reasonable care not to subject others to an unreasonable risk of harm."  Sargent v. Ross, 113 N.H. 388, 397 (1973).  When a competing rule, such as the independent contractor rule, would ordinarily preclude liability for the injurious actions of third parties, landlords

9

will be held liable for injuries caused by such actions only under special circumstances. See Walls, 137 N.H. at 657-58. Several jurisdictions have held that because landlords are responsible for the proper maintenance and repair of the rented premises, they are liable, under certain circumstances, even for injuries caused by the negligence of independent contracts whom they hire to perform maintenance and repair. See, e.g., Majorowicz v. Allied Mutual Ins., 569 N.W.2d 472, 476 (Wis. App., July 29, 1997) (analogizing non-delegable landord duties recognized in Medley v. Trenton Inv. Co., 236 N.W. 713 (Wis. 1931)); O'Brien v. Christensen, 662 N.E.2d 205, 209 (Mass. 1996); Durkin v. Hansen, 437 S.E.2d 550 (S.C. App. 1993); Strayer v. Lindeman, 427 N.E.2d 781 (Ohio 1981). But see, e.g., Polipo v. Sanders, 642 N.Y.S.2d 302 (N.Y.App.Div. 1996). In addition, the New Hampshire Supreme Court long ago suggested that it would also find that a landlord may not delegate to an independent contractor his or her responsibility to maintain safe premises. See Gobrecht v. Beckwith, 82 N.H. 415, 420 (1926).

On the record presented here, DGA has not demonstrated that, based on undisputed facts, it is entitled to judgment as a matter of law as to its liability to the injured tenants. Whether DGA is liable for injuries due to the malfunctioning furnace will likely depend on whether it performed the role of, or is accountable as a landlord, what its "landlord" duties included, and what it knew about the condition of the furnace and risks associated with its repair and maintenance. Because issues

10

pertinent to DGA's liability to the underlying plaintiffs remain both unclear and unresolved, DGA is not entitled to summary judgment on Suburban's contribution claim, at least not based on the record and argument presented here.

## C.   Indemnification

Suburban argues that DGA is obligated by an indemnification provision in Suburban's sales and service agreement with Lakeview Condominium Association.  The basis for Suburban's third-party indemnification theory is that Michael Davidson, a principal of DGA, signed the agreement, which explicitly provides that it is binding on the Association's "successors, legal representatives and assigns."  Because Davidson plainly signed the agreement in the capacity of "property manager" for the Association, his signature does not operate to obligate DGA under the terms of the agreement made between the Association and Suburban.  Suburban points to no factual support in the record for its contention that DGA was acting in one of the legal capacities specified in the agreement with respect to the heating system in unit 291. Instead, the record shows rather unequivocally that DGA was acting on behalf of the owner of the condominium, and DGA makes no argument that the owner was bound by the agreement.

In addition, as is more fully explained in the order addressing Lakeview Condominium Association's motion for summary judgment, Suburban has not shown that any factual issue exists as to whether the sales and service agreement's indemnification

provision would apply under the circumstances giving rise to the underlying plaintiffs' injuries and deaths. The indemnity provision does not by its terms cover liability for damages caused by individual unit heating systems, and Suburban offers no factual support for its theory that "irregularities with system wide pressure" either caused the malfunction or would be covered by the agreement. DGA is entitled to judgment as a matter of law on Suburban's indemnification claim.

## Conclusion

For the foregoing reasons, DGA's motion for summary judgment (document no. 66) is denied with respect to Suburban's contribution claim and is granted with respect to its indemnification claim, Count VIII in the amended complaint.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 18, 1997

cc:  John E. Friberg, Esq.
     Marc R. Scheer, Esq.
     Joseph M. McDonough, III, Esq.
     James E. Owers, Esq.
     Michael B. O'Shaughnessy, Esq.
     William L. Tanguay, Esq.

12