Hillsborough-northern judicial district
No. 2008-763

SARAH EVERITT

v.

GENERAL ELECTRIC COMPANY & a.

Argued: May 14, 2009
Opinion Issued: August 7, 2009

*Thomas Craig, P.A.*, of Manchester (*Thomas E. Craig* and *David Woodbury* on the brief, and *Mr. Woodbury* orally), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Edward M. Kaplan* and *Melissa M. Hanlon* on the brief, and *Mr. Kaplan* orally), for the defendants.

DUGGAN, J. The plaintiff, Sarah Everitt, appeals an order of the Superior Court (*McGuire,* J.) granting summary judgment to the defendants, General Electric Company (GE) and Bruce A. Hawkom. We affirm.

This is the second time this matter has come before us. A detailed account of the underlying facts of this case can be found in our previous decision, *Everitt v. General Electric Company*, 156 N.H. 202 (2007). We recite only those facts pertinent to this appeal.

On November 1, 2003, the plaintiff was injured when the vehicle in which she was a passenger was struck by another vehicle, driven by Jeremiah Citro. Citro was an employee of GE's Hooksett plant, but was not on duty at the time of the accident. The day prior to the accident, a Friday, Citro was sent home by a GE company nurse after appearing confused and disoriented. He was instructed not to return to work until the following Monday.

Despite this instruction, Citro appeared for work the next day, the day of the accident. Upon his arrival, his presence was brought to the attention of Hawkom, a supervisor on duty at that time. Hawkom reminded Citro that he was told not to return to work until Monday. According to Hawkom, the defendant appeared disheveled and his speech was slurred. Although Citro agreed to leave, he failed to do so, and Hooksett police were called to remove him from the premises. Citro, however, left before the police arrived.

Within hours Citro again arrived at the gates of the GE plant, where he was detained by security personnel and Hooksett police were summoned. The responding police officers conducted several field sobriety tests, and ultimately determined that Citro could safely drive. Approximately two hours later, the motor vehicle accident involving Citro and the plaintiff occurred.

The plaintiff instituted suit against GE and Hawkom asserting that each owed her a duty of care to prevent Citro from operating his motor vehicle on the day of the accident. The defendants moved for summary judgment, which the trial court granted. After her motion for reconsideration was denied, the plaintiff filed this appeal.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and inferences properly drawn from them, in the light most favorable to the non-moving party. *Belhumeur v. Zilm*, 157 N.H. 233, 235 (2008). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.* We review the trial court's application of the law to the facts *de novo*. *Maloney v. Badman*, 156 N.H. 599, 602 (2007).

On appeal, the plaintiff first argues that GE voluntarily assumed a duty of care towards her by adopting a guideline or policy requiring that impaired employees not be allowed to drive. The policy, titled "Reasonable Suspicion/Reasonable Cause Guidelines," outlines the procedure that should be followed when a manager suspects that an employee is impaired. The relevant portion of the policy provides:

> The manager must ESCORT the employee to the medical clinic. An impaired employee should never be allowed to drive, to protect the employee and others and to avoid being held liable for any accidents that occur. Security may need to be alerted to help control a belligerent employee.

Another section of the policy states that after a positive alcohol or drug test result,

the employer should arrange transportation for the employee off of the premises. Under no circumstances should an employee be allowed to drive. Taxis or family members can be used to transport [the] employee off the premises. If the employee insists on leaving the premises before transportation can be arranged, the supervisor should call security and the employee should be informed that local police will be contacted.

The defendants dispute that this policy is applicable to GE's Hooksett plant, and argue that, even if applicable, the policy does not impose a legal duty upon them to detain Citro and prevent him from driving. The plaintiff, however, contends that the applicability of this policy, as well as its effect upon the duty owed to her, is a question of material fact and, thus, it was error for the trial court to grant summary judgment to the defendants.

■ "Claims for negligence rest primarily upon a violation of some duty owed by the offender to the injured party." *Walls v. Oxford Management Co.*, 137 N.H. 653, 656 (1993) (quotation omitted). Absent a duty, there is no negligence. *Id.* Whether a duty exists in a particular case is a question of law. *Id.* Further, we recognize that duty is an "exceedingly artificial concept." *Id.* (quotation omitted). Therefore,

when charged with determining whether a duty exists in a particular case, we necessarily encounter the broader, more fundamental question of whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. The decision to impose liability ultimately rests on a judicial determination that the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability.

*Belhumeur*, 157 N.H. at 236-37 (quotation and brackets omitted).

Assuming, without deciding, that the policy applies to GE's Hooksett plant and, further, that the policy was not followed in dealing with Citro on the day of the accident, we conclude that the mere existence of this policy did not create a duty of care to the plaintiff. Although we have never before addressed this precise issue, numerous jurisdictions have found that the adoption of an internal corporate policy to deal with situations involving an impaired employee does not give rise to a duty to the general public. *See, e.g., Angnabooguk v. State*, 26 P.3d 447, 452 (Alaska 2001) (finding internal rules and guidelines did not create a duty of care); *Morgan v. Scott*, 2009 WL 1438905, *3 (Ky. May 21, 2009) (rejecting argument that adoption of an internal guideline and subsequent failure to follow it automatically leads to liability); *Premo v. General Motors Corp.*, 533 N.W.2d 332, 333 (Mich. Ct.

App. 1995) (finding internal policy did not create duty to protect public as a matter of public policy); *Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 451 (Tex. Ct. App. 1996) (stating "mere creation of an internal policy" does not create a duty); *Killian v. Caza Drilling, Inc.*, 131 P.3d 975, 982 (Wyo. 2006) (noting that creation of a standard of care and duty are not synonymous).

For example, in *Estate of Catlin*, the Texas Court of Appeals found that the adoption of a policy prohibiting the consumption of alcohol on an employer's premises with certain exceptions, and the failure to follow such policy, did not create a legal duty. *Estate of Catlin*, 936 S.W.2d at 451. In that case, an employee of Fluor Daniel became intoxicated at a "fish fry" on company property following a company softball game. *Id.* at 448-49. The employee left company grounds and, after consuming more alcohol at a bar, caused a motor vehicle accident resulting in Catlin's death. *Id.* at 449. At that time, Fluor Daniel had "a safety policy which forbade the consumption of alcohol on company property except at company sponsored events," and instituted formal procedures to be followed when there would be alcohol at such an event, which were not followed on this occasion. *Id.* at 449-50. Catlin's estate sued Fluor Daniel, arguing that, by creating this policy, it "assumed the responsibility to control consumption of alcohol on its premises *and subsequent* driving by its employees." *Id.* at 451. The court disagreed, stating: "We conclude that the mere creation of an internal policy regarding consumption of alcohol on the premises, whether or not the fish fry was a 'company function,' does not create a duty as set forth in [prior case law]." *Id.* The court noted that "[m]ore is required" to impose a duty. *Id.*

Similarly, *Premo* involved an intoxicated General Motors employee who had allegedly been drinking while on duty and, immediately after, caused a motor vehicle accident in which Premo was injured. *Premo*, 533 N.W.2d at 332. Premo alleged that General Motors "had a policy or 'practice, procedure and/or custom' of not allowing employees to leave the plant in their automobiles while intoxicated, but instead detaining them and arranging alternative transportation" home. *Id.* Premo thus argued that, by instituting this policy, General Motors had assumed a duty to prevent the intoxicated employee from driving in his intoxicated state. *Id.* at 333. The court disagreed, finding that General Motor's internal policy did not, as a matter of public policy, amount to an assumption of a duty to protect the public at large. *Id.* The court recognized the "significant and compelling public policy reasons" supporting its conclusion, stating: "To impose liability upon an employer who, by means of work rules, policies, etc. undertakes to address the problem of alcohol use and/or abuse is clearly against public policy and would encourage employers to abandon all efforts

which could benefit such employees in order to avoid future liability." *Id.* The court thus concluded that the relationship between the parties was too remote to obligate General Motors to protect Premo. *Id.*

We find these cases persuasive, and likewise conclude that the mere existence of an internal policy setting forth procedures to deal with an impaired employee does not, standing alone, create a duty of care to the public at large. We agree with the *Premo* court that the public policy reasons supporting our conclusion are significant and compelling. As it recognized, "[a]lcohol and substance abuse is a serious societal problem causing significant human suffering and economic loss." *Id.* The public is better served by having the problem addressed with policies such as the one at issue here. In this case, any relationship that may have existed between the parties is far too remote to give rise to a duty of care to the plaintiff.

The plaintiff argues that our case law, namely, *VanDeMark v. McDonald's Corp.*, 153 N.H. 753 (2006), "clearly constitutes an endorsement of the doctrine that a corporation may assume a duty to third parties which will thereafter be binding upon it." The plaintiff's reliance on *VanDeMark* is misplaced. In that case, an overnight custodian of a McDonald's restaurant who was an employee of the franchisee, Colley/McCoy, was seriously injured when two intruders entered the restaurant. *VanDeMark*, 153 N.H. at 755. At the time of the event, McDonald's Corporation had adopted a "Quality, Service, Cleanliness (QSC) Play Book," which included some guidelines on safety and security systems. *Id.* The injured employee sued McDonald's Corporation, and, after summary judgment was granted to McDonald's, appealed arguing that, by adopting the QSC, it had assumed a duty to ensure that Colley/McCoy followed those security measures. *Id.* at 757. We upheld the trial court's decision to grant summary judgment because Colley/McCoy was not required to employ the QSC security measures as a condition of being a franchisee. *Id.* at 758-59. Because McDonald's had not made any affirmative attempt to provide security to the franchisee's employees, it had not assumed a duty to the injured employee. *Id.* at 759.

The plaintiff infers that, had McDonald's Corporation mandated the QSC security measures, a duty would have arisen between it and the injured employee. The plaintiff contends that this inference supports a finding that there was a duty in this case. We disagree. Even assuming we would have found a duty to the injured employee had the security measures been mandatory, *VanDeMark* does not stand for the proposition that a corporation assumes a duty to protect the public every time it adopts a policy involving the protection of an employee. Although we recognized that

238

a voluntarily assumed duty may create liability to third parties, *see* RESTATEMENT (SECOND) OF TORTS § 324, it is neither automatic nor mandatory that an internal policy, even one creating a duty to an employee, would extend to the public. Therefore, GE's policy does not, in and of itself, impose a duty to protect the plaintiff.

The plaintiff next argues that the defendants owed her a duty of care under RESTATEMENT (SECOND) OF TORTS sections 317 and 319, as each section "create[s] and define[s] the special relationship between GE, Hawkom and Citro which demand action by GE and Hawkom to protect" the plaintiff. We disagree.

Section 317 of the RESTATEMENT provides:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master, . . . or
(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 317 (1965). Section 319 provides: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Id.* § 319.

The plaintiff argues that, although the accident occurred outside of GE's property and did not involve any GE chattel, the defendants nonetheless had a duty to control Citro and prevent him from driving because they had the ability to do so, and should have known it was necessary. However, even assuming, without deciding, that such a duty arose under the circumstances of this case, the defendants fulfilled that duty. It is undisputed that the defendants twice contacted the Hooksett police as a

result of Citro's presence. It is further undisputed that, as a result of the defendants' contact, and roughly two hours prior to the accident, a Hooksett police officer conducted several field sobriety tests and determined that Citro was capable of driving. The defendants were entitled to rely upon the officer's judgment in this regard. Further, the plaintiff has not cited, nor are we able to find, anything to suggest that some further action was required by the defendants. Any duty on the part of the defendants to control Citro ended when the police officers took charge of Citro.

Because the defendants fulfilled their duty to control, if any, the trial court did not err in granting them summary judgment.

*Affirmed.*

BRODERICK, C.J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.