Hillsborough, }
Feb. 1, 1938. }

HONTON ANTHONY SEDLEWICZ *v.* AGNES A. MILAISKY.

*Thomas J. Leonard, Robert E. Early* and *John R. Spring (Mr. Spring* orally), for the plaintiff.

*Lucier & Dowd, McLane, Davis & Carleton,* and *George F. Nelson (Mr. Nelson* orally), for the defendant.

WOODBURY, J.   Considered in the light most favorable to the plaintiff, his evidence tended to establish the following facts.   He and the defendant's younger sister, Lucille, were married on November 27, 1930.   For the next four years they lived together happily as man and wife, for all but about three months of that time in their own home, and during that period a daughter was born to them. During the fall of 1934 the plaintiff noticed that his wife was becoming indifferent to him and careless about her house work.   At about this same time she began to associate more intimately than before with her sister, the defendant, visiting with her more frequently and going out to ride with her in her automobile.   The plaintiff remonstrated with his wife, but to no effect, and he then went to see the defendant at her home.   He recounts their conversa-

tion as follows: "I said Agnes, I hear you have been taking Lucille out a lot and she has changed completely. Now, I said, This is for your good as well as mine, for you to leave her alone and have her go out less, and have her stay home. She spoke up in a harsh voice and said, She is going out and going to enjoy life, she isn't going to be tied down in that house. You are no good, and never will be, and she can come and live with me if she wants to." Other remarks attributed by the plaintiff to the defendant at that interview are: "She has been with me and she can come and live with me, her home is right here," and "You are not good enough for my sister, and she isn't going to live with you, I am going to take her back home with me." The plaintiff also testified to additional remarks of the same tenor made by the defendant at the same time all of which indicated her willingness to receive her sister into her home and her contempt and hatred of the plaintiff. It also appeared in the evidence that the defendant was a person of strong and vigorous personality who dominated her younger sister as well as other members of her family, and that, never having married, she had always lived with her parents in their home.

On March 20, 1935, Lucille left the plaintiff and, with their child, returned to the home of her parents. Thereafter the plaintiff and his wife were divorced.

Lucille was called to the stand by the defendant and she testified that during her entire married life with the plaintiff she had been the victim of repeated acts of cruelty on his part and that this is what finally caused her to leave him.

We are not here called upon to consider the extent of the privilege accorded by the law to parents in their communications and conduct with reference to the marital relations of their children. Neither do we need to consider the further question of whether or not, or under what circumstances, a brother or sister may share in this parental privilege. The reason for this is the complete lack of evidence of causal connection between the attitude of mind of the defendant, as illustrated by her words to the plaintiff, and the loss by the latter of his wife's affections.

The evidence shows that the defendant had the opportunity and the ability to influence her sister and it also shows that she entertained ill will toward the plaintiff. In addition it shows that she was averse to the continuance of his marriage to Lucille, and it may even be conceded that she was prepared to advise her sister to return to the home of her parents. But there is no evidence to indicate

that she ever communicated her state of mind to her sister or that her sister's decision to quit her husband was the result of anything which the defendant said or did. The most that the evidence indicates is the defendant's hostile attitude toward the plaintiff and her ability and opportunity to influence her sister had she chosen to do so. It indicates only a state of mind and the ability to cause that state of mind to operate in ways inimical to the plaintiff. It shows no more than that the defendant "held the plaintiff in unfavorable regard, it did not signify conduct in pursuance of it of a wrongful character, and there is no liability for a state of mind." *Caplan* v. *Caplan*, 83 N. H. 318, 322.

The plaintiff contends that the defendant's unlawful interference with his marital happiness may be inferred from the fact that his wife became indifferent to him, and finally left him, at a time when the defendant entertained a feeling of hostility toward him and after a period of unusual intimacy between the defendant and her sister. This inference is not one of which the evidence is capable. It is mere conjecture. *Albee* v. *Osgood*, 79 N. H. 89, 92; *Loveren* v. *Eaton*, 80 N. H. 62, 65; *Bartlett* v. *McKay*, 80 N. H. 574, 576; *Berry* v. *Merrill*, 85 N. H. 525, 527.

Although undue influence was the matter under consideration in all of these cases, the principle of law which they establish is fully applicable to the case at bar. This principle is that mere proof of opportunity and ability to unduly influence a testator or grantor is not enough to support the inference that such influence has, in fact, been exerted. We see no reason why this rule should not be here applied.

In view of the foregoing it is not necessary to consider the defendant's motion that the verdict be set aside as against the law, the evidence and the weight of the evidence, and because it was excessive.

*Judgment for the defendant.*

All concurred.