Merrimack
No. 82-494

SUZANNE A. DUVAL

v.

JOYCE G. WIGGIN

February 29, 1984

*Branch & Greenhalge P.A.*, of Concord (*Frederic T. Greenhalge* on the brief and orally), for the plaintiff.

*Law Offices of Alexander J. Kalinski*, of Manchester (*Alexander J. Kalinski* and *Daniel J. Kalinski* on the brief, and *Alexander J. Kalinski* orally), for the defendant.

BROCK, J.   In this common-law action for alienation of affections, the defendant, Joyce G. Wiggin, appeals the denial of her motion to dismiss and her motions for nonsuit, for a directed verdict, and for judgment notwithstanding the verdict. Because we conclude that the trial court erred in denying the defendant's motion for judgment notwithstanding the verdict, we reverse.

By writ of summons dated July 15, 1981, the plaintiff, Suzanne A. Duval, alleged that the defendant alienated the affections of the

In May 1982, the defendant moved to dismiss the complaint on the ground that it failed to state a cause of action. In her motion, the defendant claimed that the allegations in the plaintiff's writ were conclusory only and that the plaintiff had failed to file a more definite specification of the defendant's alleged wrongful conduct, as required by a superior court order of January 25, 1982. After the plaintiff filed a specification of facts on June 25, 1982, the defendant renewed her motion, alleging the same ground. On September 3, 1982, the Superior Court (*DiClerico*, J.), upon the recommendation of a master made after a hearing, denied the motion, and the defendant's exception was noted.

A jury trial commenced on October 12, 1982. At the conclusion of the plaintiff's counsel's opening statement, the defendant moved for a nonsuit on the ground that there was no allegation of any wrongful conduct on the part of the defendant on the basis of which there could be found to have been an alienation of affection. The Trial Court (*Souter*, J.) denied the motion, noting the defendant's exception, and allowing the plaintiff to reopen. In fact, the plaintiff's counsel amended his opening statement twice. Each time he did so, the defendant renewed her motion for a nonsuit. The motions were denied and the defendant's exceptions preserved.

At the close of the plaintiff's evidence, the defendant moved for a directed verdict on the ground that the plaintiff had failed to produce sufficient evidence as to wrongful conduct by the defendant causing alienation of affections. The defendant excepted to the denial of this motion, and his exception was noted.

The defense rested without presenting any evidence and the case was submitted to the jury, which returned a verdict for the plaintiff in the amount of $22,000. The defendant then moved for judgment notwithstanding the verdict (n.o.v.), alleging the same ground as that raised in her earlier motion for directed verdict. This motion was denied, subject to the defendant's exception, in a written ruling of October 15, 1982.

■ A party's motion for judgment n.o.v. should be granted "only when all of the evidence viewed most favorably to the opponent so overwhelmingly favors the moving party that no contrary verdict based upon that evidence could ever stand." *Amabello v. Colonial Motors*, 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977). The evidence presented to the jury included testimony by the plaintiff, her daugh-

ter, her brother-in-law, her nephew, and the defendant. The evidence, construed most favorably to the plaintiff, would show the following:

The plaintiff and Gerard were married in 1959. They have six children. During the earlier period of the marriage, Gerard drank heavily and was hospitalized for alcoholism on several occasions. Due to his inability to work, the plaintiff's family endured financial difficulties, including bankruptcy.

Gerard ceased drinking in 1974. He joined the Alcoholics Anonymous program where he met the defendant. Sometime in 1978, the defendant and Gerard had developed a relationship, through their AA experience, in which they discussed various aspects of business, personal, and family life.

Also in 1978, the defendant began to loan money to Gerard, who had begun a painting business, Sashwell Painting Company. The first loan was for $1,500, which was repaid. In 1980, the defendant loaned approximately $24,000 to Gerard and/or Sashwell Painting Company. During this same period, the plaintiff and Gerard purchased a home in Hooksett, the deed for which stands in Gerard's name alone. The prior owner of the house took back a first mortgage on the property, and the defendant took a second mortgage, signed by both the plaintiff and Gerard, for $18,000. The defendant's testimony at trial was that the $18,000 was a part of the total amount of $24,000 loaned in 1980. This loan was apparently not the subject of a formal promissory note until June 1981.

The plaintiff and her husband had difficulties in communicating throughout their marriage. However, the plaintiff indicated that, shortly before the fall of 1980, their relationship had gradually improved. Then, in November 1980, their relationship deteriorated. The plaintiff and her husband no longer had marital relations, and Gerard reverted to the type of behavior he had displayed when he had been drinking.

Gerard went away for a rest in April 1981 as part of the AA recovery program. When he returned, he told the plaintiff he wanted a separation and he moved out of the Hooksett home. In May 1981, he told the plaintiff that a reconciliation was out of the question; that there was another woman in his life; that he was in love with her; that he was planning on marrying her; and that he was going to get an annulment.

Gerard occasionally visited the defendant alone during 1979–1980. After his separation from the plaintiff in April 1981, he visited the defendant frequently, and they have taken out-of-state trips together.

Sometime in 1981, the defendant formed Sash Realty Company for the purpose of purchasing investment properties. It was origi-

nally intended that Sash Realty Company would be operated out of the Hooksett home, if that were available. The defendant hired Sashwell Painting to restore and maintain the properties she purchased. In May 1981, the defendant purchased two automobiles in her own name, doing business as Sash Realty. She and Gerard use one of the automobiles, while Gerard's son uses the other. In June 1981, Sashwell Painting Company was incorporated with Gerard as president and the defendant as treasurer.

Both Sashwell Painting and Sash Realty have offices in the same building. The building is also used as a residence. Both the defendant and Gerard reside there.

█ The trial court's charge to the jury correctly set out the elements which the plaintiff must prove in a cause of action for alienation of affections: a valid marriage, affirmative conduct by the defendant which may consist of encouragement or participation in advances initiated by the other, an intent to alienate the affections or to prevent a reasonably probable reconciliation, causation, and the resulting alienation of affections. *See* RESTATEMENT (SECOND) OF TORTS § 683 (1977); *see generally Dube v. Rochette*, 110 N.H. 129, 130–31, 262 A.2d 288, 289–90 (1970).

█ Even after construing the evidence outlined above and all reasonable inferences from that evidence most favorably to the plaintiff, we are compelled to conclude that no verdict for the plaintiff based upon that evidence could stand. Irrespective of whether there is sufficient evidence on the other elements to support the jury's verdict, there is insufficient evidence to show that the defendant acted with the intent of alienating the affections of the plaintiff's spouse or of preventing a reasonably probable reconciliation.

█ There was no direct evidence on the issue of the defendant's intent other than her own statement that she made the $18,000 loan, which aided the plaintiff and Gerard in buying their home, because she was "trying to be helpful." The jury, therefore, had to have inferred the necessary intent from the circumstantial evidence of the friendship between the defendant and Gerard, their business relationship and the defendant's loans to a person of perhaps questionable credit rating. It is indeed difficult to distinguish a reasonable inference from an unreasonable inference, and the distinction will necessarily depend upon the facts of each particular case. *See* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2528, at 565 (1971).

██ We conclude, in the context of this case, that the inference that the defendant more probably than not loaned Gerard money

and hired him to restore and maintain her property for the purpose of accomplishing a loss of affection or preventing a reasonably probable reconciliation is not a reasonable inference based upon the evidence, but rather is one based upon conjecture. *Cf. Sedlewicz v. Milaisky*, 89 N.H. 269, 271, 197 A. 332, 333 (1938). A jury's verdict based on conjecture cannot stand. *Pittman v. Littlefield*, 438 F.2d 659, 662 (1st Cir. 1971); *DiPietro v. Lavigne*, 97 N.H. 474, 476, 92 A.2d 914, 916 (1952). Since the evidence presented at trial was legally insufficient to support the jury's verdict, we conclude that the trial court erred when it denied the defendant's motion for judgment n.o.v.

In view of our decision, we need not address other issues raised by the defendant.

*Reversed; judgment for the defendant.*

SOUTER, J., did not sit; the others concurred.