790 So.2d 696 (2001)
Gilda WOODS, Individually and on Behalf of Her Minor Son, Bryant Woods
v.
ST. CHARLES PARISH SCHOOL BOARD, et al
No. 01-CA-162.
Court of Appeal of Louisiana, Fifth Circuit.
June 27, 2001.
*697 Elizabeth Haecker Ryan, Justin H. Homes, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, for Defendants/Appellees.
Jan P. Jumonville, Metairie, for Plaintiff/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
DALEY, Judge.
Plaintiff Gilda Woods, individually and on behalf of her minor son Bryant Woods, appeals the trial court's grant of defendant's Exception of Prescription. We affirm.
Woods alleged in her petition that defendant Dani O'Hara, her son's first grade teacher at New Sarpy Elementary School in Destrehan, Louisiana, had "continuously mistreated, harassed, and physically abused" her son, Bryant, while in the course and scope of her employment as a teacher with the St. Charles Parish School Board, and that such abuse was known by the principal of the school, Frederick Treuting. The petition also names Mr. Treuting and the School Board as defendants. The petition further alleges that the tortious conduct continued from August of 1997 to August 12, 1999[1], when *698 Mrs. Woods received a letter from the school stating that Bryant could not return to New Sarpy Elementary School as a student "as per request of principal." She filed this suit on April 22, 1999, seeking damages for Bryant for past physical pain and suffering, past, present, and future mental pain and suffering, past, present, and future loss of enjoyment of life, past medical expenses, past, present, and future psychological counseling expenses, and for her loss of consortium.
Defendants answered, denying all of the allegations in the petition. In addition, defendants filed an Exception of Prescription, arguing that many of the alleged acts occurred more than a year prior to the date suit was filed, and hence any cause of action related to those incidents had prescribed.
On appeal, Ms. Woods argues that the teacher's behavior constituted a continuing tort. Ms. Woods argues in brief, though not in her petition, that the school manufactured a case against her son, through the alleged incidents, to prevent him from returning in the fall of 1998. She compares the nature of the teacher and school's alleged tortious conduct to a sexual harassment "hostile environment" claim or a workplace discrimination claim, arguing that prescription did not run on each separate incident, but the incidents together created the tort.
Defendants argue on appeal that Ms. Woods's petition has not pled, nor has the evidence shown, any continuing damages to Bryant. They argue that each alleged act by the teacher was a distinct, separate incident, and did not constitute a continuing tort. The trial court agreed, and granted the Exception of Prescription insofar as Ms. Woods's petition referred to any acts greater than one year before the petition was filed.
After thorough consideration of the facts, record, and law, we affirm the judgment of the trial court.
In her petition, Ms. Woods alleged that from August of 1997 until the end of school in May, 1998, Ms. O'Hara continuously mistreated, harassed, and physically abused her son Bryant, which conduct was known and approved by the principal, Mr. Treuting. No specific dated incidents are described in the petition. The petition was filed on April 22, 1999.
Discovery, Answers to Interrogatories, and the deposition of Ms. Woods gave the following dates to her claims, outlined by the defendants in their Memorandum in Support of the Exception of Prescription. Three claims refer to alleged incidents involving physical injury to Bryant Woods:
October 1997 - Ms. O'Hara squeezed
 Bryant Woods's arm
 and pushed him down
 into his desk, leaving
 fingernail marks on
 his arm.
March 10, 1998 - plaintiff claims that
 her son was not offered
 timely medical
 treatment for a black
 eye he sustained at
 the hands of another
 student.
March 24, 1998 - plaintiff alleged that
 Bryant Woods fell and
 injured his hands at
 the school yard and
 was not offered medical
 attention in timely
 fashion.
Eleven remaining claims assert alleged false accusations and allegedly improper discipline.
August 1997 - During the first week
 of school, Ms. O'Hara
 allegedly disciplined
 Bryant Woods for
 throwing a crayon
 that he claims he did
 not throw (Gilda
 Woods's deposition,
*699
 Exhibit A at pp. 37-38
 and Answer to Interrogatory
 19, Exhibit
 B);
First semester, Plaintiff alleges that
1998 - Ms. O'Hara intentionally
 refused to call
 upon Bryant Woods
 for answers to questions
 posed in class,
 even though Bryant
 raised his hand to participate
 (Woods's deposition,
 pp. 49-52);
October 1997 - Plaintiff alleges that
 during P.E. class, another
 student struck
 Bryant Woods in the
 face. The P.E. teacher
 allegedly told
 Bryant that because
 Bryant was always
 picking on the other
 student, Bryant had
 gotten what he deserved
 (Woods's deposition,
 pp. 59-60 and
 Answer to Interrogatory
 no. 19);
February 1998 - Plaintiff described an
 incident whereby Ms.
 O'Hara allegedly refused
 to give Bryant
 Woods a piece of pizza
 he requested (Woods's
 deposition, pp. 63-66
 and Answer to Interrogatory
 no. 19);
March 5, 1998 - Plaintiff alleges that
 Bryant Woods was
 falsely accused and
 reprimanded for
 throwing mud at another
 student on
 March 3 when, plaintiff
 says, Bryant was
 absent from class for
 medical reasons
 (Woods's deposition,
 pp. 66-67 and Answer
 to Interrogatory no.
 19);
March 6, 1998 - Plaintiff claims that
 Bryant Woods was
 again reprimanded for
 being disrespectful
 and disrupting class,
 charges that plaintiff
 claims were fabricated
 (Woods's deposition,
 pp. 66-67 and Answer
 to Interrogatory no.
 19);
March 10, 1998 - Plaintiff complains
 that Bryant Woods
 was reprimanded for
 an incident wherein he
 was struck by another
 student and received a
 black eye, and that
 Bryant was reprimanded
 for the incident
 while the other
 student was not
 (Woods's deposition,
 pp. 79-84 and Answer
 to Interrogatory no.
 19);
March 24, 1998 - Plaintiff claims that
 Bryant Woods's teachers
 reprimanded him
 on false charges again
 and that another student
 who kicked
 Bryant was not reprimanded
 for that misconduct
 (Woods's deposition,
 pp. 84-87 and
 Answer to Interrogatory
 no. 19);
Week before Plaintiff claims that
Mardi Gras, 1998 - Bryant Woods was unfairly
 punished apparently
 in connection
 with an altercation
 Bryant had with another
 student and that
 Bryant was reprimanded
 but the other
 student was not
 (Woods's deposition,
 pp. 87-88 and Answer
 to Interrogatory no.
 19);
April 16, 1998 - Plaintiff claims that
 she was not notified of
 a change in physical
 education class policy;
*700
 Bryant Woods was
 "out of his space" and,
 pursuant to the new
 policy, was expelled
 from physical education
 class. Plaintiff
 further contends that
 a school administrator
 lied to plaintiff and
 told her that Bryant
 had misbehaved in art
 class (Woods's deposition
 at pp. 90-91 and
 Answer to Interrogatory
 no. 19); and
April 17, 1998 - Plaintiff claims that
 accusations that
 Bryant Woods was
 disrespectful to his
 teachers were fabricated
 (Woods's deposition,
 pp. 91-92 and
 Answer to Interrogatory
 no. 19).
Plaintiff has likened these alleged incidents, in brief, to a continuing tort and to a hostile environment sexual harassment claim or a workplace discrimination claim, claiming that prescription did not run on the entire time period until the conduct abated, which she claims is August 12, 1998, when she received a letter from the school dated August 10, 1998, stating that Bryant could not return to New Sarpy Elementary School that fall.[2] In brief, Ms. Woods also states that in the spring of 1998, she received a communication from someone at the school that a "case" was being made against Bryant so that he would not be allowed to return to that school in the fall. We note, however, that in her petition, Ms. Woods does not ask for damages for her son's exclusion from New Sarpy Elementary School, nor does she seek his re-enrollment. Ms. Woods's petition does not allege that the school engaged in a systematic harassment of her son to deny him enrollment for the fall of 1998.
Under the continuing tort doctrine, tortious conduct and resulting damages continue over a period of time, and prescription does not begin or run until the conduct causing the damages has abated. South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531 (La.1982). In the Texaco case, the defendant's underground gas tanks leaked gasoline continuously, causing continuous damage to the telephone company's underground cables. The court held that prescription did not begin to run until the leaks were stopped and the continuing damage to the telephone cables was abated.
The conduct alleged in this case was not continuous. This case is comparable to Laughlin v. Breaux, 515 So.2d 480 (La. App. 1 Cir.1987). In that case, plaintiff alleged that she had been abused by her boyfriend over three years and detailed specific incidents of abusive conduct. In trying to defeat an exception of prescription as to several incidents alleged to have occurred more than one year prior to her filing suit, she argued that the boyfriend's abuse constituted a continuing tort. The court disagreed, saying:
Nor do we find any merit to Plaintiffs contentions that Defendant's actions constituted a continuing tort. The principle of a continuing tort only applies when continuous conduct causes continuing damages. South Central Bell Telephone Co. v. Texaco Inc., 418 So.2d 531 (La.1982). In this action each incident of battery and of assault is separate, and gives rise to a separate cause of action. See Bouton v. Allstate Insurance Co., 491 So.2d 56 (La.App. 1st Cir.1986). Thus, the conduct of Defendant is not *701 continuous. Prescription runs from the date damages are sustained; damages are sustained from the date the injury is inflicted if they are immediately apparent to the victim, even though the extent of the damages may not be known. Home Insurance Co. v. Highway Insurance Underwriters, 52 So.2d 449 (La. App. 1st Cir.1951). In this action, Plaintiff testified as to several different incidents of abuse by Defendant. After the abuse, she was physically bruised and sore, and emotionally upset. These injuries were immediately apparent. Prescription runs from this time, even though several different incidents of abuse may have combined to produce Plaintiff's Battered Woman's Syndrome. For these reasons, we find that the trial judge was correct in ruling that Plaintiffs cause of action for any incidents occurring prior to March 28, 1984 had prescribed.
Ms. Woods, in her appellate brief, also analogizes her son's treatment to a "hostile environment" sexual harassment cause of action, or a workplace discrimination claim. See Bustamento v. Tucker, 607 So.2d 532 (La.1992); Brown v. Vaughn, 589 So.2d 63 (La.App. 1 Cir.1991); King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181; and Waltman v. International Paper Co., 875 F.2d 468 (5th Cir.1989). However, the allegations in her petition do not set forth any claim for discrimination against Bryant on any basis of gender or race.
We find the instant case to be distinguishable, factually, from the cases describing hostile environments that Ms. Woods cites in brief. In Bustamento v. Tucker, plaintiff filed suit for intentional infliction of emotional distress, alleging that her co-worker had subjected her to almost daily incidents of sexual harassment over a two-year period. The court found that the tort was characterized by the cumulation of acts and conduct, and the resulting cumulation of damages, that transformed individual incidents of harassment, not all of them severe enough to constitute harassment when considered individually, into an actionable tort. The harassment Ms. Bustamento described consisted of the defendant cursing her, making improper sexual comments, innuendos, and advancements at her, invading her privacy by questioning her about her marital relationship, and threatening her with physical violence, including rape. He also used his forklift to physically terrify plaintiff by driving it at her and attempting to run her over or pin her against walls with it. In suing for intentional infliction of emotional distress, plaintiff alleged that the repeated and continuous outrageous behavior cumulated to form the tort itself.
In King v. Phelps Dunbar, L.L.P., supra plaintiff sued for intentional infliction of emotional distress based upon alleged incidents of racial discrimination. The court held that a plaintiff seeking to recover for intentional infliction of emotional distress must establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. For a plaintiff to recover for emotional distress intentionally caused by extreme and outrageous conduct, the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.
In the instant case, the alleged incidents bear no resemblance to the types of behavior alleged in the above cases. They do *702 not constitute outrageous behavior of a pattern to cumulate into a tort such as intentional infliction of emotional distress. Also, plaintiffs petition does not allege such a tort. The alleged incidents do not occur with discernable pattern during the first semester of the year (August-December, 1997). The rest of the alleged incidents occurred with greater frequency in March and April of 1998, but most appear to be instances where the teacher disciplined Bryant for classroom misbehavior, discipline with which Ms. Woods disagreed or felt the grounds were fabricated. As described in discovery, neither the incidents themselves nor the disciplinary measures (mostly reprimands) were extreme in degree or offensive to normal sensibilities. The alleged incidents, disciplinary or otherwise, do not rise to the level of a pattern of outrageous conduct by the teacher against Bryant that elevates the individual events into a tort greater than its parts. Factually, the alleged incidents here bear no resemblance to the types of harassment or discrimination, sexual or otherwise, described in Bustamento or the other cases cited in Ms. Woods's brief.
Further, each incident alleged here, if true, was immediately knowable by Ms. Woods, who, we note, did in fact complain to the school on virtually every occasion she now alleges forms the basis for the continuing tort.
After reviewing the facts and the law, we do not find any similarity between the allegations in this case and a hostile environment claim or an intentional infliction of emotional distress claim. Ms. Woods's petition does not allege continuing damages to Bryant, nor does the evidence adduced through discovery support continuing conduct or continuing damages. Plaintiff has not alleged any discrimination against her son on any basis, nor does she allege or offer any evidence of continuing damages. Her petition does not assert that the cumulation of separate events operated to create a pervasive atmosphere of discrimination against her son.
The conduct described in the Answers to Interrogatories and Ms. Woods's deposition was not continuous, but consisted of discrete, separate events. Because the alleged conduct did not form a continuing tort, defendant's Exception of Prescription was properly granted as to those incidents alleged to have occurred more than one year prior to plaintiffs filing suit, and we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] In her deposition, Ms. Woods admitted that the year 1999 was wrong, and should have read 1998.
[2] We note that the last alleged abusive incident by the teacher Ms. O'Hara is described as occurring in April of 1998, not through August 1998, as the petition alleges (and as acknowledged by Ms. Woods at her deposition, p. 47).