NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2014-0496


DANIELLE (GRAVELINE) GAUTHIER M/N/F MORGAN GRAVELINE

v.

MANCHESTER SCHOOL DISTRICT, SAU #37

Argued: April 22, 2015
Opinion Issued: September 4, 2015


Backus, Meyer & Branch, LLP, of Manchester (B J Branch on the brief and orally), for the plaintiff.


McDonough, O'Shaughnessy, Whaland & Meagher PLLC, of Manchester (Robert J. Meagher on the brief and orally), for the defendant.


HICKS, J. The plaintiff, Danielle (Graveline) Gauthier, as mother and next friend of Morgan Graveline, appeals an order of the Superior Court (Garfunkel, J.) granting summary judgment to the defendant, Manchester School District, SAU #37. We affirm.

The following facts are derived from the trial court's order. On February 4, 2011, Morgan was involved in an altercation with another student, A.M., on a school bus. During that altercation, A.M. punched Morgan in the face. The bus driver reported the incident to the defendant on February 7.

The school principal, Barry Albert, downloaded the bus driver's report on February 8 and met with Morgan the next day. Morgan minimized the incident, told Albert she did not know the name of the other student involved in the altercation, and asked Albert not to notify her mother. Although Albert informed Morgan that he would have to notify her mother, he did not do so.

Albert met with A.M. on February 14. A.M. admitted hitting Morgan and was given a three-day suspension.

Meanwhile, Morgan received threatening Facebook messages from another student, A.A., on February 13 and 14. Albert learned about the messages on the morning of February 15 and knew that A.A. and Morgan would both be in the cafeteria at lunch that day. Albert went to the cafeteria at that time and told A.A. to see him after lunch. After Albert left the cafeteria, a fight broke out. Morgan was hit several times, sustaining injuries to her head, face, and mouth. She was transported to the emergency room. Albert met with Morgan's mother, the plaintiff, in the emergency room and, for the first time, told her about the February 4 bus incident and the threatening Facebook messages.

At all relevant times, the defendant had in place a written anti-bullying policy implemented pursuant to RSA 193-F:4, II (Supp. 2014). That statute mandates the adoption, by each school district's school board, of a written policy prohibiting bullying and cyberbullying. The policy must contain, among other things, "[a] procedure for notification, within 48 hours of the incident report, to the parent or parents or guardian of a victim of bullying or cyberbullying and the parent or parents or guardian of the perpetrator of the bullying or cyberbullying." RSA 193-F:4, II (h). The defendant's anti-bullying policy provides that "[t]he Principal or administrative designee shall report to the parents of a student who has been reported as a victim of bullying and to the parents of a student who has been reported as a perpetrator of bullying within 48 hours of receiving the report."

The plaintiff brought suit to recover for Morgan's injuries. The trial court dismissed one of the two counts, and that dismissal is not challenged on appeal. The parties then filed cross motions for summary judgment on the remaining count — a negligence claim based upon Albert's failure to notify the plaintiff of the alleged bullying. The court granted the defendant's cross-motion, ruling that it was "barred by the grant of immunity under RSA 507-B:5" and did "not fall within the exception under RSA 507-B:2."

On appeal, the plaintiff argues that the trial court erred in finding the defendant immune from suit pursuant to RSA 507-B:2 and :5. She maintains that the court erred in finding no nexus between her claim that Albert "failed to comply with a school district policy that expressly governed the 'operation['] of her school" and the defendant's operation of the school premises. See Dichiara

2

v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 698 (2013) (holding that "RSA 507-B:2 provides an exception to RSA 507-B:5 only when there is a nexus between the injury and a governmental unit's ownership, occupation, maintenance, or operation of a motor vehicle or premises"). Alternatively, the plaintiff argues that if RSA 507-B:2 and :5 apply to immunize the defendant in this case, they violate both the right to remedy and equal protection guarantees of Part I, Article 14 of the New Hampshire Constitution. Finally, the plaintiff asks us to "exercise [our] discretion to resolve a question of law, by interpreting the requirements of the parental notice provision of the Manchester School District anti-bullying policy." (All capitals and underlining omitted.) The defendant cross-appeals, arguing for affirmance of the trial court's order because: (1) there is no common-law duty to report bullying within forty-eight hours; and (2) it is entitled to immunity under RSA 193-F:7 (Supp. 2014) and the doctrine of official immunity.

Because the plaintiff's RSA 507-B:2 and :5 immunity argument raises an issue of constitutional law, and "[t]his court has a strong policy against reaching a constitutional issue in a case that can be decided on a nonconstitutional ground," Anglin v. Kleeman, 140 N.H. 257, 260 (1995) (quotation omitted), we first address the defendant's arguments for affirmance on alternative grounds. See id. (noting that "we will uphold the trial court even if it may have reached the right result on mistaken grounds"). The defendant argues that summary judgment should be affirmed because "[t]he plaintiff has not identified a common law duty to support a negligence action, and any statutory duty under RSA [chapter] 193-F carries with it the blanket immunity contained in RSA 193-F:7." If we accept the defendant's argument that no statutory or common law duty lies in this case, the plaintiff's argument that RSA 507:2 and :5 immunity is unconstitutional becomes moot.

"The existence of a duty in a particular case is a question of law, which we review de novo." Mikell v. Sch. Admin. Unit #33, 158 N.H. 723, 731 (2009). According to the plaintiff, her "claim is that [Albert] had a common law duty to protect and supervise [Morgan] and that he breached this duty by failing to notify her parent of [an incident] report that he received . . . and that RSA [chapter] 193-F, the anti-bullying statute, was implicated in the assault." The plaintiff contends that this is a common law claim cognizable under Marquay v. Eno, 139 N.H. 708, 720 (1995), and not barred by RSA chapter 193-F. Accordingly, we pause to examine Marquay and the applicable provisions of RSA chapter 193-F.

In Marquay, the United States District Court for the District of New Hampshire certified to us certain questions of state law, including whether the child abuse reporting statute, see RSA 169-C:29 (2014), creates a private right of action and whether:

3

New Hampshire common law impose[s] a duty upon defendant teachers, coaches, superintendents, principals, secretaries, school districts and school administrative units to protect plaintiff students by reporting alleged sexual misconduct to the proper authorities or taking other protective measures, if they knew, or render them liable if they should have known, that plaintiffs were being sexually harassed, assaulted or abused by . . . [other teachers or coaches].

Marquay, 139 N.H. at 712.

Before addressing the district court's questions, we clarified the potential roles a statutorily-prescribed standard of conduct may play in establishing civil liability. Id. at 713-15. In short, the statute may create, either explicitly or implicitly, a cause of action for violation of its standard of conduct or, if a cause of action already exists at common law, "the standard of conduct to which a defendant will be held may be defined as that required by statute, rather than as the usual reasonable person standard." Id. at 713. The latter role is referred to as the doctrine of negligence per se. See id. As Marquay made clear, however, "[t]he doctrine of negligence per se . . . plays no role in the creation of common law causes of action" and "in many cases, the common law may fail to recognize liability for failure to perform affirmative duties that are imposed by statute." Id. at 713-14. "If no common law duty exists, the plaintiff cannot maintain a negligence action, even though the defendant has violated a statutory duty." Id. at 714.

Turning to the district court's questions, we held that the child abuse reporting statute neither created a private right of action, id. at 715, nor supplied a standard of care, under the doctrine of negligence per se, "in an action based on inadequate supervision of a student," id. at 716. Nevertheless, we recognized that "schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision." Id. at 717.

The statute at issue in this case explicitly states that it does not create a private right of action. RSA 193-F:9 provides:

> **Private Right of Action Not Permitted.** Nothing in this chapter shall supersede or replace existing rights or remedies under any other general or special law, including criminal law, nor shall this chapter create a private right of action for enforcement of this chapter against any school district or chartered public school, or the state.

RSA 193-F:9 (Supp. 2014). In addition, RSA 193-F:7 provides immunity from suit, stating, in part:

> A school administrative unit employee, school employee, chartered public school employee, regular school volunteer, pupil, parent, legal guardian, or employee of a company under contract to a school, school district, school administrative unit, or chartered public school, shall be immune from civil liability for good faith conduct arising from or pertaining to the reporting, investigation, findings, recommended response, or implementation of a recommended response under this chapter.

RSA 193-F:7.

Determination of whether the plaintiff may maintain her action first requires that we discern the nature of her claim. The defendant contends that the plaintiff seeks to enforce "a duty to report alleged bullying to a parent in 48 hours" and argues that "[a]bsent the 'bullying' policy and statute, there did not exist [such a duty] at common law." The plaintiff counters that she is not relying upon either "a statutory violation and an allegedly created private right of action" or negligence per se, but, rather, seeks to hold the defendant liable, under respondeat superior, for Albert's breach of his "common law duty to protect and supervise" Morgan in accordance with Marquay. She hopes, however, to admit "RSA [chapter] 193-F and the [defendant's] bullying prevention policies as evidence that a jury could consider on the issue of what constitutes due care, in relation to her negligence claim." We conclude that the distinction the plaintiff seeks to draw is illusory and her reliance upon Marquay is unavailing.

Although neither party provided the court with a copy of the plaintiff's complaint, the trial court characterized the plaintiff's remaining claim as "alleg[ing] that the defendant breached its duty to notify [Morgan's] mother of the alleged bullying in accordance with the school's anti-bullying policy." (Emphasis added.) As neither party has challenged that characterization, we accept it as accurate. Furthermore, statements in the plaintiff's brief make clear that her claim is inextricably intertwined with RSA chapter 193-F: she describes her common law negligence claim as "resting on the failure to comply with the parental notification policy" and contends the defendant "breach[ed] its 'in loco parentis' duty to comply with its adopted policy for parental notification." (Emphasis omitted.) Nevertheless, despite the plaintiff's invocation of Marquay and her mention of a "negligent breach of the duty to protect and supervise," the only specific duty she actually claims was breached is the duty to report in accordance with the school's anti-bullying policy.

Moreover, we do not read Marquay to impose upon schools an overarching "duty to protect and supervise" in all instances and against all harms. "In general, the concept of duty arises out of the relationship between the parties and protection against reasonably foreseeable harm. The existence and extent of that duty depends upon the nature of the relationship between

the parties." Mikell, 158 N.H. at 731 (citation omitted); see also Ahrendt v. Granite Bank, 144 N.H. 308, 314 (1999) (noting that private persons generally have no duty to protect others from criminal acts by third persons but that "[s]uch a duty may arise . . . if a special relationship exists" (quotation omitted)).  In Marquay we recognized that a special relationship exists between schools and the students in their care so as to impose upon schools "certain duties of reasonable supervision." Marquay, 139 N.H. at 717 (emphasis added).  The specific duty involved in Marquay was that of "protect[ing] plaintiff students by reporting alleged sexual misconduct to the proper authorities or taking other protective measures." Id. at 712.

Even in Marquay, however, we made clear that the duty we recognized there was not unlimited.  We declined to impose a personal duty of supervision upon every school employee, but rather held that "the duty falls upon those school employees who have supervisory responsibility over students and who thus have stepped into the role of parental proxy." Id. at 717-18.  In addition, we "limited the duty . . . to only those periods of time when parental protection is compromised, and only to those risks that are reasonably foreseeable." Mikell, 158 N.H. at 731 (discussing Marquay).

We have subsequently declined to extend Marquay.  For instance, in Mikell, we declined to impose liability upon a school for the suicide of one of its students. Id. at 732.  We disagreed that the "special relationship [recognized in Marquay] — and the duty of reasonable supervision — extends so far as to create a duty to prevent a student's suicide in this case." Id.

We similarly decline to extend Marquay to create a duty to report bullying under the facts alleged in this case. Cf. Stephenson v. City of New York, 925 N.Y.S.2d 71, 73 (App. Div. 2011) (concluding school and city not liable in negligence for failure to prevent second assault on student despite notice of first assault and finding "it unreasonable to impose a duty on the school to notify a parent about a fight between two students when the school has already affirmatively addressed the misconduct"), aff'd, 978 N.E.2d 1251, 1253-54 (N.Y. 2012) (noting "[t]here is no statutory duty to inform parents about generalized threats made at school, and the circumstances here do not give rise to a common-law duty to notify parents about threatened harm posed by a third party").  Our reluctance to do so is supported by the legislature's expressed intent that a breach of RSA chapter 193-F not give rise to liability. See RSA 193-F:7, :9.  Recognition of a common law right of action under the facts alleged in this case would undermine the policy thus expressed by the legislature.  We find instructive the logic of the United States Court of Appeals for the Second Circuit in affirming dismissal of a common law fraud claim in Broder v. Cablevision Systems Corp., 418 F.3d 187 (2d Cir. 2005):

> [I]t is unlikely that the New York legislature, while not intending to grant a direct private right of action under [New York Public

6

Service Law] § 224-a, did intend a private right of action to be available to anyone who took the extra step of alleging that a violation of § 224-a constituted common-law fraud. And it is unlikely that New York courts, which frown on artful pleading to circumvent a bar against private actions, would allow such an end-run around the legislature's apparent intent.

Broder, 418 F.3d at 201 (quotations, brackets, and citations omitted); see also Kerusa Co. LLC v. W10Z/515 Real Estate Ltd., 906 N.E.2d 1049, 1055 (N.Y. 2009) ("That [the plaintiff] alleged the elements of common-law fraud does not transmute a prohibited private cause of action to enforce Martin Act disclosure requirements into an independent common-law tort.").

Because we find no common-law duty under these circumstances, we affirm the grant of summary judgment for the defendant. Having found the trial court's order sustainable on this ground, we need not address the plaintiff's constitutional challenge to RSA 507-B:2 and :5 immunity. See Anglin, 140 N.H. at 260. We also decline the plaintiff's invitation to interpret the requirements of the parental notice provision of the Manchester School District anti-bullying policy.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.